## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| BMO Harris Bank, N.A., | Civil File No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| S. Todd Rapp, individually, and S. Todd Rapp, P.A., | |
| Defendants. | |

BMO Harris Bank N. A. ("BMO") for its Complaint against Defendants S. Todd Rapp, individually, and S. Todd Rapp, P.A. ("Defendants") states and alleges as follows:

### PARTIES

1.      BMO is a national bank with a principal place of business located at 111 West Monroe Street, Chicago, Illinois 60603.  In 2011, BMO acquired M&I Marshall & Ilsley Bank ("M&I") in a merger.  BMO owns and operates bank branches in numerous locations in Minnesota, including in Dakota County.  Some of these bank branches currently operate, or previously operated, under the M&I name.

2.      Defendant S. Todd Rapp ("Rapp") is a natural person who, on information and belief, is an attorney-at-law licensed in the state of Minnesota, and who owns and operates a law firm located at 4686 Slater Road, Eagan, Minnesota 55122, and who resides at 1516 Parson Hill Drive, Burnsville, Minnesota 55337.

3.      Defendant S. Todd Rapp, P.A. ("Rapp P.A."), on information and belief, is a Minnesota corporation owned and operated by Rapp.

4. This is an action for breach of contract, refund under Minn. Stat. § 336.4-214, and negligent misrepresentation arising out of Defendants' deposit of a check at an M&I bank branch in Burnsville, Minnesota that turned out to be counterfeit. After provisional settlement of this deposit, Defendants instructed M&I to wire $150,000 to a foreign bank. After the wire was made, M&I was notified that the check was counterfeit and would not be honored by the purported issuing bank. M&I charged back the deposit amount against the account, resulting in the account being overdrawn in the amount of $149,970.36. BMO seeks this amount, plus applicable fees, interest, costs and disbursements, from Defendants.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1332(a)(1) as there is complete diversity of citizenship between the Plaintiff and Defendants.

6. Plaintiff seeks damages in excess of the minimum jurisdictional requirement of $75,000, exclusive of interest and costs, as set forth at 28 U.S.C. § 1332(a). As such, the amount in controversy requirement of 28 U.S.C. 1332(a) is satisfied.

7. Defendants are subject to personal jurisdiction in Minnesota because they reside and do business in Minnesota and because Defendants caused Plaintiff to suffer injury in Minnesota.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants reside or may be found in this judicial district, Defendants are

subject to personal jurisdiction in this judicial district, and a substantial portion of the events giving rise to this action occurred within this judicial district.

## STATEMENT OF BACKGROUND FACTS

9. On or about September 19, 2011, Defendant Rapp opened a Premier Money Market Account at the M&I bank branch in Burnsville, Minnesota.

10. The account was titled in the name of "S Todd Rapp PA."

11. At the time of account opening, Defendant Rapp informed the bank officer that he intended on using the account to facilitate a real estate transaction for a client, whom Defendant Rapp identified as Dr. Anne Aspler.

12. At the time of account opening, Defendant Rapp deposited a check in the amount of $429,000, made out to "S. Todd Rapp, Attorney at Law," and drawn on an account in the name of Dr. Aspler at T.D. Bank USA, N.A.

13. On September 21, 2011, Defendant Rapp sent an email to the manager of the bank branch, stating that Dr. Aspler had requested the sum of $150,000 to be wired from Defendant's account to the Tokyo Tomin Bank for the purpose of purchasing medical equipment.

14. On or about September 21, 2011, Defendant Rapp had a conversation with the manager of the bank in which Defendant Rapp expressed concern about the wire request and told the bank manager that he intended on contacting his client to verify the validity of the transaction. Defendant Rapp subsequently contacted the manager of the bank, told the manager that Defendant Rapp had spoken with his client and verified the validity of the transaction.

15. On September 22, 2011, after receiving assurances from Defendant Rapp that the transaction was legitimate, and after confirming that the funds were "available" under applicable regulations and the funds availability policy for business checking accounts of M&I's Rules for Deposit Accounts and Funds Availability Policies ("Deposit Rules"), M&I made the wire transfer as requested.

16. On September 27, 2011, Defendant Rapp requested that an additional $124,400 be wired to the same Tokyo Tomin Bank account.

17. At that time, M&I contacted T.D. Bank's deposit verification operations department requesting verification of the $429,000 check and that it had cleared the bank.

18. On September 30, 2011, T.D. Bank informed M&I that the check was counterfeit. On that same day, M&I sent Defendants a "return item advice," informing Defendants that the account had been charged $429,000 as a result of a deposit item being counterfeit.

19. M&I thereafter attempted to retrieve the $150,000 wire transfer from the Tokyo Tomin Bank.

20. On October 4, 2011, the Tokyo Tomin Bank notified M&I that the beneficiary had withdrawn the funds and had refused the bank's request to return the funds.

21. As a result of the foregoing, Defendant's account became overdrawn and remains overdrawn in the initial amount of $149,970.36.

22. When Defendant Rapp opened this account at M&I, he executed a Depository Agreement that, among other things, indicated that Defendant Rapp P.A.

"acknowledges receipt of the Rules for Deposit Accounts and Funds Availability Policies ["Deposit Rules"] and agrees to them."

23. The Deposit Rules provided that in accordance with the Funds Availability Guidelines in Regulation CC, the Bank's "policy in general is to make funds from your deposits available to you on the first or second business day after the day we receive your deposit . . . At that time, you can withdraw the funds…"

24. The Deposit Rules further state that, "even after we have made the funds available to you, and you have withdrawn the funds, you are still responsible for any checks you deposit that are returned unpaid."

25. Despite demand from BMO and their obligations under the Depository Agreement and applicable law, Defendants have not repaid the funds disbursed from the account at Plaintiff's request.

## COUNT I

## BREACH OF CONTRACT (Against Rapp P.A.)

26. BMO incorporates herein by reference all the foregoing paragraphs of this Complaint.

27. M&I and Defendant Rapp P.A. entered into a valid and binding contract, the Depository Agreement, which incorporates by reference the Deposit Rules. Defendant Rapp signed the Depository Agreement as President of Defendant Rapp P.A.

28. M&I and its successor, BMO, have fully complied with all obligations under the contract with Defendant Rapp P.A.

29.  Defendant Rapp P.A. has breached the contract by failing to bring its account current and by failing to repay the funds overdrawn from its account. In particular, the Deposit Rules provide that "even after we have made funds available to you, and you have withdrawn the funds, you are still responsible for any checks you deposit that are returned unpaid."

30.  BMO as successor to M&I has been damaged by this breach of the contract, and is entitled to judgment against Defendant Rapp P.A. for the sum of $149,970.36, plus accruing interest and also court costs and disbursements as provided under the contract between the parties and/or applicable law.

## COUNT II

### REFUND UNDER UCC § 336.4-214 (Against Rapp and Rapp P.A.)

31.  BMO incorporates herein by reference all the foregoing paragraphs of this Complaint.

32.  Minn. Stat. § 336.4-214 provides that:

> If a collecting bank has made provisional settlement with its customer for an item and fails by reason of dishonor, suspension of payment by a bank, or otherwise, to receive settlement for the item which is or becomes final, the bank may . . . obtain refund from its customer, whether or not it is able to return the item, if by its midnight deadline or within a longer, reasonable time after it learns the facts and returns the item and sends notification of the facts.

33.  M&I made provisional settlement with Defendants for the $429,000 check deposited by Defendant Rapp (and made out to him personally as payee), which Defendant Rapp deposited into the Rapp P.A. account and which check later was dishonored by the issuing bank as a counterfeit.

34. M&I notified Defendants of the dishonor promptly upon learning of it, and made timely demand for refund from Defendants in the amount of the deposit that had, at that time, been disbursed.

35. Under Section 336.4-214, BMO as successor to M&I is entitled to a refund of the dishonored amount from Defendants, in the amount of $149,970.36, plus accruing interest and also court costs and disbursements as provided under the contract between the parties and/or applicable law.

## COUNT III

## NEGLIGENT MISREPRESENTATION (Against Rapp)

36. BMO incorporates herein by reference all the foregoing paragraphs of this Complaint.

37. On or about September 21, 2011, Defendant Rapp acting as attorney for the purported Dr. Aspler, instructed M&I to make a $150,000 wire transfer to an account Defendant specified at Tokyo Tomin Bank, and Defendant assured M&I that the transaction was legitimate and necessary to enable Dr. Aspler to purchase medical equipment.

38. Defendant thus made a representation to M&I of a fact, that was susceptible of knowledge, that was material, and that Defendant made for the purpose of inducing M&I to act by making the wire transfer.

39. Despite making the representation that the transaction was legitimate, Defendant failed to exercise due care to ensure that the transaction was in fact legitimate.

40. Defendant's representation to M&I was false, as the transaction was in fact a fraudulent scam.

41. M&I relied on Defendant's false representation to M&I's detriment, as M&I advanced funds to Tokyo Tomin Bank when in fact the underlying deposit was fraudulent, and the counterfeit deposit and fake medical purchase transaction were part and parcel of a fraudulent scheme. As a result, M&I has advanced funds resulting in an overdraft of Defendant's account in the amount of $149,970.36, and M&I has been damaged in that amount.

42. M&I's damages were proximately caused by Defendant's negligent misrepresentation.

43. BMO as successor to M&I is entitled to judgment against Defendant Rapp for his negligent misrepresentation in the amount of $149,970.36, plus accrued interest, court costs, disbursements and attorneys fees to the extent authorized by contract and/or applicable law.

**WHEREFORE,** BMO prays that this Court enter judgment as follows:

1. That BMO prevail in its claims against Defendants.

2. That BMO have and recover from Defendants the principal sum of $149,970.36, plus accrued interest, court costs and disbursements to the extent authorized by contract and/or applicable law.

3. For such other relief as the Court deems just and proper.


Dated: April 2, 2012         s/ Keith S. Moheban
                                        Keith S. Moheban (#216380)
                                        Elizabeth A. Larsen (#30461X)
                                        **LEONARD, STREET AND DEINARD**
                                            **Professional Association**
                                        150 South Fifth Street, Suite 2300
                                        Minneapolis, Minnesota 55402
                                        Telephone: 612-335-1500
                                        Facsimile: 612-335-1657

                                        John L. Kirtley (WI State Bar No. 1011577)
                                        *(motion for leave to appear pro hac vice pending)*
                                        Brian C. Spahn (WI State Bar No. 1060080)
                                        *(motion for leave to appear pro hac vice pending)*
                                        **GODFREY & KAHN, S.C.**
                                        780 North Water Street
                                        Milwaukee, Wisconsin 53202
                                        Telephone:  (414) 273-3500
                                        Facsimile:   (414) 273-5198

                                        **ATTORNEYS FOR PLAINTIFF**
                                        **BMO HARRIS BANK, N.A.**