UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| BMO Harris Bank, N.A., | Court File No. 12-CV-00819-PJS-FLN |
| Plaintiff, | |
| v. | **AGREEMENT AND STIPULATION FOR ENTRY OF JUDGMENT UNDER *MILLER-SHUGART*** |
| S. Todd Rapp, individually, and S. Todd Rapp, P.A., | |
| Defendants. | |

IT IS HEREBY STIPULATED AND AGREED by and between Plaintiff BMO Harris Bank, N.A. ("BMO"), on the one hand, and Defendants S. Todd Rapp ("Rapp") and S. Todd Rapp, P.A. ("Rapp P.A."), on the other hand, as follows:

## RECITALS

a. On April 2, 2012, BMO commenced this action (hereafter "the Action") against Defendants.

b. In its Complaint, BMO alleges claims for breach of contract, refund under Minn. Stat. § 336.4-214, and negligent misrepresentation. The claims arise out of Defendant Rapp's deposit of a check at an M&I Bank (now BMO) branch in Burnsville, Minnesota, from an alleged client who had hired Rapp to represent her on a real estate purchase. The check was deposited for the purpose of establishing a client escrow fund to facilitate the real estate transaction. After provisional settlement of this deposit, Defendants instructed M&I to wire $150,000 to a foreign bank. At that time Defendant

    Rapp informed the bank his client had requested the transfer to enable his client to purchase medical equipment. After the wire was made, M&I was notified by the purported issuing bank that the check was counterfeit and would not be honored. M&I charged back the deposit amount against the account, resulting in the account being overdrawn in the amount of $149,964.05. BMO sued the Defendant law firm for failure to repay the overdraft in the account. BMO sued Defendant Rapp because, but for his negligent misrepresentations with respect to the deposit and wire transactions, no overdraft would have occurred. BMO seeks the amount of the overdraft, plus costs and disbursements, from Defendants.

c.   Defendants are insured under the terms of a liability policy issued by Liberty Insurance Underwriters, Inc. ("Liberty Insurance"). Defendants promptly tendered their defense in the Action to Liberty Insurance.

d.   Liberty Insurance has denied the existence of any coverage for any of Plaintiff's claims against Defendants.

e.   Liberty Insurance has denied any duty to defend Defendants and has abandoned them.

f.   Based on review and analysis of the insurance contract and applicable law, it is apparent that the negligent misrepresentation claim against Rapp is covered by the Liberty Insurance policy for both defense and indemnity.

g.   Defendant Rapp acknowledges that applicable law and facts of which he is aware are sufficient to create a strong likelihood that he will be found liable

to BMO on the negligent misrepresentation claim asserted in the Complaint. Defendant Rapp acknowledges that a jury could reasonably find that Rapp's negligent misrepresentation caused BMO's damages and that the reasonable value of BMO's damages is $149,964.05, which constitutes the amount of the negative balance in the account resulting from the deposit of the forged check payable to Rapp and the $150,000 wire transfer out of the account directed by Rapp. Rapp P.A., separately and independently from Rapp's personal liability for negligent misrepresentation, has potential liability to pay the damages caused by Rapp, based on the provisions of its depository agreement and Minnesota's Uniform Commercial Code.

## AGREEMENT AND STIPULATION

NOW, THEREFORE, in light of the costs and expense of the ongoing litigation, the risk and exposure of Defendants, the represented inability of either Defendant to pay all or any substantial portion of a judgment, the availability to Defendants of a bankruptcy defense, and the failure of Liberty Insurance to provide defense or indemnity to Defendants, the Parties now wish to fully compromise, settle and resolve all claims between themselves that relate to or arise out of the Action pursuant to the terms and conditions set forth herein. Defendants and Plaintiff have considered, kept in mind and been guided by the decision of the Minnesota Supreme Court in *Miller v. Shugart*, 316 N.W.2d 279 (Minn. 1982) and its progeny:

Accordingly, for and in consideration of the mutual agreements, covenants, and representations herein, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties stipulate and agree as follows:

1. Agreement. Plaintiff BMO shall have judgment, and Defendants shall consent and stipulate to BMO's taking a judgment in the Action, for damages sustained on account of the conduct referred to in each of the three counts of the Complaint, recognizing that each count separately and independently supports judgment in the sum of One Hundred Forty Nine Thousand Nine Hundred Sixty Four Dollars and 05/100ths ($149,964.05), plus costs and disbursements.

   a) Plaintiff shall be entitled to enforce the judgment and any amount collected shall satisfy the judgment to the full extent of the amount collected.

   b) Subject to the provisions of this Agreement, Plaintiff will not seek to collect this judgment directly from either Defendant;

   c) This judgment may not be satisfied by attachment of real property nor shall it become a lien upon any real estate, real property owned, or any other owned assets, nor which hereafter may be owned by either Defendant, and Plaintiff will take no action and will refrain from any attempt to collect any portion of any judgment or settlement from either Defendant personally.

d) Plaintiff may seek to satisfy this judgment from Liberty Insurance and in particular the proceeds of Defendants' insurance contract with Liberty Insurance. Plaintiff may take any legal action available to enforce the provisions of Defendants' insurance contract with Liberty Insurance. To the extent necessary to this end, Defendants hereby assign Defendants' right or claims under the applicable insurance policy to Plaintiff, and agree to execute any further assignment papers as may be reasonably required.

e) BMO's agreement to satisfy the judgment solely from the Liberty Insurance contract is expressly based on BMO's reliance on representations made by Defendants that:

(1) Defendants were not complicit in the fraudulent check transaction and had no knowledge of or participation in the criminal activity at the time it occurred, and

(2) Defendants have provided truthful, accurate and complete financial disclosure to BMO, indicating that neither Defendant has sufficient assets to pay the judgment or any significant portion thereof.

f) In the event that BMO learns that the Defendants, or either of them, were complicit in the fraud, or if BMO learns of a material misrepresentation in Defendants' financial disclosure, then BMO's agreement to limit its collection of the judgment to the Liberty

Insurance contract shall become null and void, and BMO may then take efforts to recover the judgment from the Defendants without limitation.

g) Plaintiff will file with the Court a full and complete satisfaction of judgment in favor of Defendants upon:

(1) full payment of judgment;

(2) final settlement with Liberty Insurance and receipt by BMO of any settlement funds; or

(3) upon final adjudication (including denial of all appeals) of BMO's action against Liberty Insurance determining that Liberty Insurance has no liability with respect to this matter.

h) The satisfaction of judgment so filed will be a full and complete satisfaction of judgment on claims Plaintiff has against Defendants or either of them in the Action.

2. *Miller v. Shugart* Agreement. To the extent this *Agreement and Stipulation for Entry of Judgment under Miller v. Shugart* violates the principles and intended effect of *Miller v. Shugart* and its progeny, Plaintiff and Defendants fully empower the Court to make whatever modifications in this Agreement necessary to achieve a valid and enforceable *Miller v. Shugart* agreement.

3. Entire Agreement. This Agreement contains the entire agreement between Plaintiff and Defendants and shall be binding upon and insure to the benefit

of the executors, administrators, personal representatives, heirs, successors, and assigns of each.

4. <u>Cooperation</u>. Each party to this agreement agrees to cooperate fully and to execute any and all supplementary documents and to take all additional actions which may be necessary or appropriate to give full force and effect to the terms and intent of this agreement.

5. <u>Stipulation for Judgment</u>. Plaintiff shall be entitled to have judgment, and Defendants hereby consent and stipulate to Plaintiff taking a judgment, jointly and severally, for damages sustained on account on each of the counts of the Complaint, independently, in the sum of One Hundred Forty Nine Thousand Nine Hundred Sixty Four Dollars and 05/100ths ($149,964.05), plus costs and disbursements.

6. <u>Motion for Entry</u>. Upon entry of this Agreement and Stipulation, BMO shall request that the Court enter a judgment upon and subject to all conditions set forth in this Agreement and Stipulation. Defendants shall immediately provide notice of this Agreement and Stipulation to Liberty Insurance. If the Court enters an order that judgment be entered pursuant to this Agreement and Stipulation, this Agreement and Stipulation shall become final and binding in all respects and for all purpose. If the Court declines to enter an order that judgment in favor of Plaintiff be entered in the action based on and subject to the terms of this Stipulation and Agreement based upon a finding of fraud, collusion, or lack of notice, then

this Agreement and Stipulation shall be and become void and of no further effect.

**THE UNDERSIGNED HAVE READ THE FOREGOING AGREEMENT AND FULLY UNDERSTAND IT, HAVING HAD THE ADVICE OF COUNSEL AVAILABLE TO THEM.**

Dated: June 27, 2012

_____
BMO Harris Bank, N.A.
By its: _____AVP_____

Dated: June 12, 2012

_____
S. Todd Rapp

Dated: June 12, 2012

_____
S. Todd Rapp, P.A.
By its: _____CEO_____